# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

PAUL EDWARD MILLER,

        Defendant-Appellant.

UNPUBLISHED
August 22, 2017

No. 331773
Genesee Circuit Court
LC No. 14-036370-FC

Before: TALBOT, C.J., and SAWYER and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of four counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a), seven counts of second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(a), one count of distributing sexually explicit material to a minor, MCL 722.675(1)(a), four counts of using a computer to commit a crime, MCL 752.796(1), and four counts of possession of child sexually abusive material, MCL 750.145c(4). The trial court sentenced defendant to concurrent prison terms of 25 to 45 years for each CSC I conviction, 10 to 15 years for each CSC II conviction, 16 to 24 months for the distribution of sexually explicit material conviction, and 30 to 48 months for each conviction of using a computer to commit a crime and possession of child sexually abusive material. We affirm.

Defendant was convicted of sexually abusing two girls, CAM and CHM, both of whom were under 13 years of age. He was also convicted of possessing sexually abusive material on his computer, and showing a sexually explicit video to one of the girls. The evidence against defendant consisted of testimony from the young victims, testimony from an investigating officer, who described the images of child sexually abusive material found on CDs in defendant's possession, and two adult witnesses, who testified that defendant sexually abused them when they were children. Defendant represented himself at trial, with the assistance of appointed standby counsel.

## I. BRIEF ON APPEAL

### A. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the trial court erred by denying his motion for a directed verdict on various charges of which he was convicted. Specifically, defendant contends that he was entitled to a directed verdict of acquittal on both counts of CSC I involving CAM, one count of CSC I

involving CHM, one count of CSC II involving CAM, one count of CSC II involving CHM, three counts of using a computer to commit a crime, three counts of possession of child sexually abusive material, and the count of disseminating sexually explicit material to a minor. We disagree.

"When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews the record de novo to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt." *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001); see also *People v Szalma*, 487 Mich 708, 721; 790 NW2d 662 (2010). Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of a crime. *People v Schultz*, 246 Mich App 695, 702; 635 NW2d 491 (2001). Questions regarding the credibility of witnesses or the weight of evidence are to be decided by the jury. *People v Mehall*, 454 Mich 1, 6; 557 NW2d 110 (1997); *People v Peña*, 224 Mich App 650, 659; 569 NW2d 871 (1997), mod in part on other grounds 457 Mich 885 (1998).

### 1. EVIDENCE SUPPORTING CSC I CONVICTIONS

The jury convicted defendant of CSC I for engaging in sexual penetration with a person under 13 years of age. MCL 750.520b(1)(a). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r).

Defendant argues that the prosecution did not present sufficient evidence to support his convictions of CSC I as to CAM, and to support both convictions of CSC I as to CHM. We disagree. Defendant correctly points out that when CAM testified at trial, she denied that penetration occurred. However, during defendant's cross-examination of the investigating officer, defendant elicited testimony that during a forensic interview CAM stated that defendant put his fingers inside her vagina. Defendant did not object to this testimony or argue that it was admissible only for a limited purpose. The jury was entitled to believe the testimony that CAM made statements regarding penetration and to believe CAM's testimony that defendant touched her vagina on at least two occasions. The jury could infer from the testimony of CAM and the officer that defendant penetrated CAM's vagina on two occasions. *Schultz*, 246 Mich App at 702.

Defendant concedes that the evidence supported at least one conviction of CSC I as to CHM, but argues that because CHM testified that no penetration occurred the first time he touched her vagina, and because she stated that he touched the inside of her vagina "sometimes" on the second occasion and could not recall about the third occasion, a jury could not find beyond a reasonable doubt that penetration occurred more than once. We again disagree. CHM, who was 12 years old at the time of trial, testified that defendant touched her vagina on three consecutive nights. No penetration occurred the first night. CHM could not recall with certainty when defendant touched the inside of her vagina, but stated that he did so more than two times over the summer. A victim need not testify as to the exact date on which a sexual assault allegedly occurred, and a sexual assault victim's testimony need not be corroborated. MCL

750.520h. CHM's testimony allowed the jury to find that defendant's actions constituted penetration as that term is defined, MCL 750.520a(r), on two occasions. *Peña*, 224 Mich App at 659.

## 2. EVIDENCE SUPPORTING CSC II CONVICTIONS

The elements of CSC II are sexual contact with a person under 13 years of age. MCL 750.520c(1)(a). "Sexual contact" is defined in MCL 750.520a(r) as follows:

> "Sexual contact" includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for:
>
> (i) Revenge.
>
> (ii) To inflict humiliation.
>
> (iii) Out of anger.

Defendant asserts that the evidence supported convictions of only three acts of sexual contact with CAM rather than four acts, and only two acts of sexual contact with CHM rather than three acts. Once again, we disagree. The testimony of a sexual assault victim need not be corroborated. MCL 750.520h. CAM testified that she touched defendant's penis twice when they were in the music room and that defendant touched her buttocks and breasts in the same room. This testimony was sufficient to establish the elements of four counts of CSC II with respect to CAM. CHM testified that one night defendant touched her vagina and buttocks over her clothing. She testified that on another occasion defendant touched her breasts. This testimony was sufficient to establish the elements of three counts of CSC II with respect to CHM.

## 3. EVIDENCE SUPPORTING USE OF A COMPUTER TO COMMIT A CRIME AND POSSESSION OF CHILD SEXUALLY ABUSIVE MATERIAL CONVICTIONS

Defendant was charged with four counts of using a computer to commit a crime, the crime being possession of child sexually abusive material, and four counts of possession of child sexually abusive material.

MCL 752.796(1) provides, "(1) A person shall not use a computer program, computer, computer system, or computer network to commit, attempt to commit, conspire to commit, or solicit another person to commit a crime."

MCL 750.145c(4) provides:

> A person who knowingly possesses or knowingly seeks and accesses any child sexually abusive material is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $10,000.00, or both, if that

-3-

person knows, has reason to know, or should reasonably be expected to know the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child.

The term "child sexually abusive material" is defined in MCL 750.145c(1)(o) as follows:

"Child sexually abusive material" means any depiction, whether made or produced by electronic, mechanical, or other means, including a developed or undeveloped photograph, picture, film, slide, video, electronic visual image, computer diskette, computer or computer-generated image, or picture, or sound recording which is of a child or appears to include a child engaging in a listed sexual act; a book, magazine, computer, computer storage device, or other visual or print or printable medium containing such a photograph, picture, film, slide, video, electronic visual image, computer, or computer-generated image, or picture, or sound recording; or any reproduction, copy, or print, of such a photograph, picture, film, slide, video, electronic visual image, book, magazine, computer, or computer-generated image, or picture, other visual or print or printable medium, or sound recording.

Defendant acknowledges that images found on CDs taken from his music room depicted child sexually abusive material, and that the images had been downloaded by someone. Nevertheless, defendant argues that the prosecutor did not prove beyond a reasonable doubt that he himself used his or any other computer to download the images. Furthermore, defendant asserts that even if the evidence established that he used a computer to download the images, no evidence showed that he did so on more than one occasion. Defendant further argues that such evidence would support only one conviction of possession of child sexually abusive material.

Defendant correctly states that no direct evidence established that he downloaded the images to the CDs found in his music room. However, circumstantial evidence and reasonable inferences arising therefrom established the offenses. Defendant's wife testified that defendant's music room contained a desktop computer and CDs, and that defendant burned music onto CDs. Defendant controlled access to the room, which was locked with a padlock. To his wife's knowledge, only defendant had a key to the lock, and he kept his keys in his pocket. Defendant's wife identified defendant's handwriting on several CDs taken from the music room. The CDs had handwritten titles such as "stocking models," "pussy pics," and "nudes." These are the same CDs on which defendant acknowledges appear images of child sexually abusive material. Thus, the evidence that defendant knew how to use a computer to make CDs, that the CDs containing images of child sexually abusive material had titles written in defendant's handwriting, and that those CDs were kept in a locked room to which defendant controlled access supported a finding that defendant used a computer to make the CDs. *Schultz*, 246 Mich App at 702.

We also disagree with defendant's argument that the evidence, if believed, supported only one conviction of possession of child sexually abusive material. In *People v Harmon*, 248 Mich App 522; 640 NW2d 314 (2001), the defendant took nude photographs of two 15-year-old

girls. The defendant took two photographs of each girl, and was charged with four counts of making child sexually abusive material, MCL 750.145c(2). The defendant argued that the evidence supported only two convictions (one for each girl) because the photographs were taken during the same session. The *Harmon* Court disagreed, concluding that because the defendant took four separate photographs, he could be charged with four separate offenses under the plain language of the statute. *Id.* at 528. Defendant argues that *Harmon* is distinguishable because he was charged with possessing child sexually abusive material rather than making the same. However, defendant was charged with possessing multiple photographs that depicted different children.[1] The same reasoning that supported multiple convictions in *Harmon* applies with equal force to this case. Defendant possessed at least four photographs that featured different children and depicted child sexually abusive material. The evidence supported four convictions for that offense.

## 4. EVIDENCE SUPPORTING DISTRIBUTION OF SEXUALLY EXPLICIT MATTER TO A MINOR CONVICTION

MCL 722.675 provides, in pertinent part:

(1) A person is guilty of disseminating sexually explicit matter to a minor if that person does either of the following:

(a) Knowingly disseminates to a minor sexually explicit visual or verbal material that is harmful to minors.

(b) Knowingly exhibits to a minor a sexually explicit performance that is harmful to minors.

The term "sexually explicit matter" includes "sexually explicit visual material." MCL 722.673(f). The term "sexually explicit visual material" is defined in MCL 722.673(i) as follows:

"Sexually explicit visual material" means a picture, photograph, drawing, sculpture, motion picture film, video game, or similar visual representation that depicts nudity, sexual excitement, erotic fondling, sexual intercourse, or sadomasochistic abuse, or a book, magazine, or pamphlet that contains such a visual representation. An undeveloped photograph, mold, or similar visual material may be sexually explicit material notwithstanding that processing or other acts may be required to make its sexually explicit content apparent.

Defendant contends that the evidence was insufficient to support his conviction of disseminating sexually explicit matter to CAM. Defendant notes that CAM stated that the videos she saw depicted naked adults kissing and rubbing each other's buttocks; he contends that such

---

[1] The investigating officer's description of the images shown to the jury makes clear that the images depict different children.

content does not meet the definition of sexually explicit visual material. Defendant also asserts that no evidence supported a finding that he disseminated the material to CAM because she did not testify that he told her to look at the video. We disagree.

CAM testified that she and defendant were in the music room when defendant played a video on the computer. She stated that one video showed naked adults kissing and rubbing one another's buttocks. CAM stated that defendant did not ask her to look at the computer, but described the activities in the video to her. CAM's testimony was sufficient to establish that defendant exhibited a video depicting naked adults engaged in erotic fondling. CAM's statement that defendant described the contents of the video to her also supported a finding that he knowingly disseminated the video to her. The jury was entitled to believe CAM's testimony on this issue. *Peña*, 224 Mich App at 659. The evidence showed that defendant's conduct fell within that prohibited by MCL 722.675(1)(a).

Because the evidence presented by the prosecutor was sufficient to allow a rational trier of fact to find beyond a reasonable doubt the defendant committed each element of the challenged offenses, the trial court did not err by denying defendant's motion for a directed verdict.

## B. OTHER ACTS EVIDENCE

Next, defendant argues that the testimony offered by the adult witnesses regarding the past abuse should have been excluded because its probative value was substantially outweighed by the danger of unfair prejudice. We disagree. We review for an abuse of discretion a trial court's decision to admit other acts evidence. *People v Waclawski*, 286 Mich App 634, 670; 780 NW2d 321 (2009). An abuse of discretion occurs when a court chooses an outcome that is outside the range of reasonable and principled outcomes. *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007). The determination whether the probative value of other acts evidence is substantially outweighed by the danger of unfair prejudice is best left to the trial court's contemporaneous assessment of the credibility, presentation, and effect of the testimony. *Waclawski*, 268 Mich App at 670. We review de novo a preliminary question of law related to the admission of evidence. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010).

MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

To be admissible under MRE 404(b)(1), evidence (1) must be offered for a proper purpose, (2) must be relevant, and (3) must not have a probative value that is substantially outweighed by the potential for unfair prejudice. *People v Steele*, 283 Mich App 472, 479; 769 NW2d 256 (2009). A proper purpose is one other than establishing the defendant's propensity to commit the

-6-

offense. *People v Johnigan*, 265 Mich App 463, 465; 696 NW2d 724 (2005). Evidence of an act similar to the charged offense is relevant to show that the charged act occurred if the uncharged conduct and the charged conduct are sufficiently similar to support an inference that they manifested from a common plan, scheme, or system. *People v Dobek*, 274 Mich App 58, 90; 732 NW2d 546 (2007). Other acts evidence is unfairly prejudicial if it presents a danger that marginally probative evidence would be given undue weight by the jury. *People v Ortiz*, 249 Mich App 297, 306; 642 NW2d 417 (2001).

If a defendant is charged with committing a sexual offense against a minor, evidence that the defendant committed another such act is admissible under MCL 768.27a(1). *People v Watkins*, 491 Mich 450, 469; 818 NW2d 296 (2012). MCL 768.27a(1) provides:

> Notwithstanding section 27, in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant. If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered.

Evidence that is admissible under MCL 768.27a(1) can still be excluded under MRE 403. *Watkins*, 491 Mich at 481. MRE 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

When determining whether to exclude such evidence under MRE 403, the court may consider various factors, including but not limited to: (1) the dissimilarity between the charged offense and the other acts, (2) the temporal proximity of the other acts to the charged offense, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, (6) the need for evidence beyond that originating from the charged offense, and (7) whether the other acts resulted in charges or convictions. *Watkins*, 491 Mich at 487-488.

Defendant does not argue that the other acts evidence, was inadmissible under MCR 404(b)(1) and MCL 768.27a(1). Rather, defendant asserts that the evidence should have been excluded under MRE 403 because its probative value was substantially outweighed by the danger of unfair prejudice. Defendant emphasizes that the misconduct against the witnesses was alleged to have occurred more than 20 years before the time of trial, and thus was too remote to be relevant. In addition, defendant contends that the acts that he is alleged to have engaged in with the witnesses were so dissimilar in nature to the allegations in the instant case as to be irrelevant. Finally, defendant asserts that the other acts evidence was not reliable because the women initially denied that he sexually abused them.

Although defendant correctly points out that the other acts allegedly occurred many years before trial, the remoteness of other acts evidence generally goes to the weight of the evidence rather than to its admissibility. *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011) (MCL 768.27a(1) contains no temporal limitation; remoteness of 10-year-old allegation goes to weight not admissibility). Defendant is technically correct in asserting that the allegations of masturbation, oral sex, and penile/vaginal intercourse made by the other acts witnesses were different from the acts of touching and digital penetration alleged by CAM and CHM. The women alleged that defendant assaulted them at home at nap time when they were between the approximate ages of 5 and 10 years old. CAM and CHM alleged that defendant assaulted them at home at night when everyone was sleeping. The children alleged that they were in the same approximate age range when the incidents occurred. Even though the acts described by the other acts witnesses differed from the type of acts described by CAM and CHM, the fact that the charged and uncharged acts were all sexual in nature and were committed against minor children of approximately the same age and who were related to defendant enhanced the probative value of the evidence. The other acts evidence demonstrated a similar scheme or plan by defendant and a lack of mistake on the part of CAM and CHM. *Brown*, 294 Mich App at 386-387. Defendant asserts that the testimony from the women was unreliable because at one time both denied that defendant assaulted them. However, the witnesses explained why they previously denied that defendant had assaulted them, and the credibility of their testimony in light of those explanations was an issue for the jury to determine. *People v Milstead*, 250 Mich App 391, 404; 648 NW2d 648 (2002). Further, the trial court gave a cautionary instruction advising the jury on the limited permissible purpose of the other acts evidence, thereby reducing any potential for unfair prejudice. Accordingly, we are not persuaded that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.

## II. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional issues in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, none of which warrant appellate relief.

Defendant raises several claims of misconduct by the prosecutor, none of which were preserved with an appropriate objection at trial. *People v Dupree*, 486 Mich 693, 703; 788 NW2d 399 (2010). A claim of prosecutorial misconduct is generally reviewed de novo. *People v Pfaffle*, 246 Mich App 282, 288; 632 NW2d 162 (2001). The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). Prosecutorial misconduct issues are decided on a case-by-case basis. The reviewing court must examine the pertinent portion of the record, and evaluate a prosecutor's conduct in context. *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999). However, an unpreserved claim of misconduct is reviewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). An error is plain if it is clear or obvious, and an error affects substantial rights if it is prejudicial, i.e., if it affects the outcome of the proceedings. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003). No error requiring reversal will be found if the prejudicial effect of the prosecutor's remarks could have been cured by a timely instruction. *People v Leshaj*, 249 Mich App 417, 419; 641 NW2d 872 (2002).

There is no merit to defendant's argument that the prosecutor denied him a fair trial and undermined the presumption of innocence by asking the jury to find him guilty without evidence to support the charges. Due process requires a prosecutor to introduce sufficient evidence to justify the trier of fact in concluding that the defendant is guilty beyond a reasonable doubt of the charged offenses. *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010).

In its preliminary instructions, the trial court advised the jury that defendant was not required to prove his innocence, that defendant was presumed to be innocent, and that defendant was entitled to a verdict of not guilty unless the prosecution proved every element of the charged offenses beyond a reasonable doubt. A jury is presumed to follow its instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). The prosecutor concluded her opening statement by stating:

> And when you put all of that [i.e., the evidence to be presented] together I will come back and I will ask you to return a verdict of guilty beyond a reasonable doubt for all of those counts, for all of the penetrations, for all of the sexual contact, all of the child sexually abusive material or child pornography, using a computer to obtain that pornography and showing adult pornography to children. Thank you.

Viewed in context, the prosecutor did not ask the jury to convict defendant without sufficient supporting evidence. Rather, the prosecutor stated that she would seek a guilty verdict after presenting evidence. The prosecutor's statement did not denigrate defendant's presumption of innocence. Thus, the prosecutor's remarks were not improper.

Next, defendant argues that the prosecutor's statement that defendant had sexual intercourse with one of the past victims was not supported by the evidence, thereby denying him a fair trial. Defendant also argues that reversal is required because standby counsel was ineffective in assisting him at trial. We reject both of these arguments.

Defendant chose to represent himself at trial, but the trial court directed his appointed counsel to serve as standby counsel. The presence of standby counsel does not negate the total deprivation of counsel that requires reversal if the trial court's grant of a defendant's request to represent himself is invalid. *People v Willing*, 267 Mich App 208, 227-228; 704 NW2d 472 (2005) (the defendant's waiver of right to counsel was ineffective; presence of standby counsel did not negate invalid waiver). In this case, however, defendant does not challenge the validity of his waiver of his right to counsel. He states that standby counsel was ineffective, but he makes no specific allegations regarding what he believes to have been standby counsel's ineffective assistance. Standby counsel was not responsible for the presentation of the defense. *Willing*, 267 Mich App at 227, citing *United States v Taylor*, 933 F2d 307, 312-313 (CA 5, 1991).

A prosecutor cannot make a statement to the jury that is not supported by the evidence, but is permitted to argue the evidence and all reasonable inferences arising therefrom. *People v Unger*, 278 Mich App 210, 236, 241; 749 NW2d 272 (2008). Defendant claims that the prosecutor made false statements regarding his attempts to get close to children so as to have an opportunity to abuse them and regarding his conduct with a past victim. However, defendant

fails to identify the allegedly false statements or provide appropriate citations to the record in support of this claim. *People v Petri*, 279 Mich App 407, 413; 780 NW2d 882 (2008). Defendant's failure to properly argue the merits of this assertion of error precludes appellate review. *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).

Next, defendant argues that a prosecution witness refused to turn over exculpatory evidence, and that the actions of the prosecutor swayed the jury and denied him a fair trial. Again, however, defendant does not identify the witness and does not identify the specific nature of the evidence allegedly withheld. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Because defendant has given this Court nothing to review, this issue has been abandoned.

Defendant argues that he had enough evidence to prove his innocence, particularly to show that he was mistakenly identified, but the conditions under which he was incarcerated in the county jail (witnessing murders and being threatened by guards) prevented him from being able to present his evidence in an effective manner. Although defendant moved for a new trial and argued that he was denied the opportunity to present evidence, he did not specify the type of evidence he wished to present, and he made no allegations regarding identification evidence. Defendant also did not allege that conditions in the county jail prevented him from presenting exculpatory evidence. Accordingly, this issue is not preserved, *Dupree*, 486 Mich at 703, and our review is limited to plain error affecting defendant's substantial rights, *Carines*, 460 Mich at 763-764.

Defendant asserts that the child witnesses had to have been mistaken in their identification of him because no allegation was made that the perpetrator said anything or that the victims saw the perpetrator. Defendant also asserts that the facts that he witnessed two murders and was harassed by guards while in the county jail made him too nervous to properly present his exculpatory evidence.

Defendant's allegations are without merit. To the extent that defendant claims that his standby counsel should have done more to defend him, this argument must be rejected in light of defendant's decision to represent himself. A defendant who chooses to represent himself cannot thereafter claim that he was denied the effective assistance of counsel. See *People v Kevorkian*, 248 Mich App 373, 419; 639 NW2d 291 (2001).

Further, the record does not support defendant's assertions that he was in any way prevented from presenting so-called exculpatory evidence. Defendant did not cross-examine either CAM or CHM, or call them as defense witnesses. Moreover, defendant offers no proof that the murders he allegedly witnessed actually occurred,[2] or that any incident in the county jail had any effect on his ability to present his defense.

---

[2] The prosecutor's response brief disavows any knowledge of these alleged murders.

Finally, defendant argues that the trial court should not have allowed a "guard" dog to sit with the children, and that the trial court's restriction of his movements (i.e., requiring defendant to stay at the podium when questioning witnesses) prevented him from presenting the evidence to establish his innocence. We disagree.

We review for an abuse of discretion a trial court's decisions regarding the conduct of the trial. *People v Johnson*, 315 Mich App 163, 177; 889 NW2d 513 (2016). But because defendant did not object to the dog's presence in the courtroom, or to the movement restrictions, this issue is not preserved, *Dupree*, 486 Mich at 703, and our review is limited to plain error affecting defendant's substantial rights, *Carines*, 460 Mich at 763-764.

The trial court has broad discretion and authority to control the course of a trial. This authority "includes the ability to employ procedures that assist a witness when testifying[.]" *Johnson*, 315 Mich App at 177. In *Johnson*, this Court addressed this issue when the defendant argued that trial counsel's failure to object to the presence of a canine companion during the testimony of the six-year-old complainant constituted ineffective assistance. This Court disagreed, holding that "it is within the trial court's inherent authority to control its courtroom and the proceedings before it to allow a witness to testify while accompanied by a support animal." *Id*. at 178.

In this case, defendant mischaracterizes the canine companion as a guard dog. Nothing in the record supports this characterization. When CHM took the stand, the trial court informed the jury that Amos, a canine companion, would be sitting beside CHM while she testified. The trial court made no indication that the dog's presence was necessary for the child's safety. Defendant contends that the presence of the dog denied him a fair trial, but does not specify how the dog's presence did so. The decision in *Johnson* supports the trial court's decision to allow the dog to be present during the children's testimony. Defendant has not demonstrated any other circumstances that would distinguish this case from *Johnson*, and so has not established that the trial court's decision constituted plain error. *Carines*, 460 Mich at 763-764.

In addition, the trial court's requirement that defendant remain at the podium when questioning witnesses did not constitute an abuse of discretion. During the hearing on defendant's request to represent himself at trial, the trial court advised defendant that he would be required to adhere to the same rules that applied to lawyers, and that he would be required to question witnesses from the podium and could not simply move about the courtroom at will. Defendant indicated that he understood, and did not object to the conditions. At no point during the trial did defendant allege that the requirement that he remain at the podium was preventing him from effectively presenting evidence or putting on a defense. Defendant's assertion that the trial court's restrictions on his movement precluded him from presenting evidence finds no support in the record, and defendant gives no specific examples of how the restriction allegedly harmed him. Accordingly, defendant has not shown that the trial court's restrictions constituted plain error. *Carines*, 460 Mich at 763-764.

Affirmed.

/s/ Michael J. Talbot
/s/ David H. Sawyer
/s/ Cynthia Diane Stephens